IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **BLAKE DONEGAN,** by and through his mother, **ANGELA DONEGAN,** individually and on behalf of a class, <br><br>　　　　　　　　　　　Plaintiff, <br><br>vs. <br><br>**FELICIA F. NORWOOD,** in her official capacity as Director of the Illinois Department of Healthcare and Family Services, <br><br>　　　　　　　　　　　Defendant. | No. <br><br>Judge: <br><br>Magistrate: |

**COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

Now comes the Plaintiff, by and through his attorneys, Robert H. Farley, Jr., Ltd. and Cahill & Associates, and file the following complaint against the Defendant as follows:

**I. INTRODUCTION**

1. The Plaintiff, Blake Donegan, is a medically fragile disabled person who currently receives funding from the Defendant for approximately 14 hours a day of in-home shift nursing services at his home at a cost of approximately $14,000 per month, so that he does not have to be institutionalized or hospitalized for his entire life at a rate of approximately $55,000 per month. The Plaintiff's funding from the Defendant comes from the State of Illinois through a Medicaid program, commonly referred to as Nursing and Personal Care Services (NPCS).

2. The Plaintiff's enrollment in the NPCS program is only available to persons under the age of 21. When those persons in the NPCS program turn 21, the Defendant's policy and practice is to reduce the existing medical funding by approximately 50% based solely on the fact that the

1

person is now 21. This reduction in funding is not due to a change in the Plaintiff's medical needs but on the fact that the Plaintiff's funding at age 21 comes from a different State program, which has significant caps on funding. The reduction in funding will either result in the Plaintiff becoming institutionalized (hospitalized) or if he remains in the family home without sufficient skilled nursing care, then he faces a strong possibility of imminent death or a life threatening episode.

3. Prior to the filing of this lawsuit by the Plaintiff, the Defendant has been successfully challenged by individual plaintiffs in 5 separate lawsuits over its practice and policy of reducing medical funding which results in a reduction of medical services when the disabled person turns 21 years of age.[1] Moreover, in *Hampe v. Hamos*, No. 10 C 3121 (N.D. Ill.) (October 3, 2013) a Consent Decree was entered on behalf of a class of "[a]ll persons who are enrolled or will be enrolled or were enrolled in the State of Illinois' Medically Fragile, Technology Dependent Medicaid Waiver Program (MF/TD) and when they obtain the age of 21 years are subjected to

---

[1] Three Federal District Courts found that the Defendant violated the ADA and RA by reducing funding for medically fragile plaintiffs when they turned 21 years of age. See *Radaszewski v. Maram*, 2008 U.S. Dist. LEXIS 24923, *37-41 (N.D. Ill. 2008) (J. Darrah); *Grooms v. Maram*, 563 F.Supp.2d 840 (N.D. Ill. 2008) (J. Pallmeyer); and *Sidell v. Maram*, 2009 U.S. Dist. LEXIS 131324 (C.D. Ill. 2009) (J. McDade).

Two other medically fragile plaintiffs have prevailed against the Defendant in Illinois. See: *Jones v. Maram*, 867 N.E.2d 563 (3rd Dist. 2007) (Illinois Appellate Court affirming lower court granting of preliminary injunction for plaintiff who aged out of a medically fragile program and was at-risk of institutionalization); *Fisher v. Maram*, 06 C 4405 (N.D. Ill.) (January 8, 2009 - Doc. 118) (J. Guzman) (enjoining Defendant from reducing services for plaintiff who aged out of a medically fragile program).

2

reduced Medicaid funding which reduces the medical level of care which they had been receiving prior to obtaining 21 years." (Doc. 240 at par. 5). The terms of the Consent Decree provide that a "class member's need, level and amount of medical services will be based upon medical necessity, not the chronological age of the class member". (*Id.* at par. 12). The instant case seeks class action status on behalf of the other group of medically fragile persons in Illinois who are enrolled in the NPCS program. Persons in the NPCS program are not enrolled in the MF/TD Waiver and are not part of the class in *Hampe.*

4. Despite the fact that the Defendant has not prevailed to provide reduced medical funding in these 5 separate federal and state lawsuits as well as the *Hampe* class action Consent Decree brought by similarly situated persons like the Plaintiff who is turning 21, the Defendant continues the same practice to date to reduce medical funding at age 21 as evidence by the Plaintiff's case. Accordingly, the Plaintiff brings this lawsuit, individually and on behalf of a class, seeking declaratory and injunctive relief to prevent the Defendant from reducing the level of funding for medical care currently provided to the Plaintiff and the putative class, which is necessary to prevent institutionalization (hospitalization), which is a more costly and a more restrictive setting than the current home placement.

5. This class action lawsuit is necessary in order to stop the Defendant from continuing to systematically violate the Americans with Disabilities Act and the Rehabilitation Act for persons aging out of the "NPCS" program and turning 21 years of age and facing significant reductions in their funding which places them at risk of either institutionalization or death.

## II. JURISDICTION & VENUE

6. This is an action for declaratory and injunctive relief to enforce the rights of the Plaintiff and the class he seeks to represent under the Americans with Disabilities Act, 42 U.S.C. Sec. 12132 and Section 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794(a).

7. This Court has jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343, which grant this Court original jurisdiction in all actions authorized by 43 U.S.C. § 1983 to redress the deprivation under color of state law any rights, privileges, or immunities guaranteed by the United States Constitution and Acts of Congress. The Plaintiffs' and Class' claims for declaratory and injunctive relief are authorized under 28 U.S.C. §§ 2201-02 and 42 U.S.C. § 1983.

8. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here and because Defendant Norwood may be found here.

## III. PARTIES

9. The Plaintiff, Blake Donegan, turned 21 years of age on February 28, 2016. Blake is medically fragile and currently receives funding from the Defendant for approximately 14 hours a day of in-home shift nursing services at his home (98 hours per week). These nursing services are either provided by a registered nurse (RN) or a licensed practical nurse (LPN).

10. Blake has diagnoses of Niemann-Pick Disease Type C and refractory epilepsy which is difficult to control. Blake has ongoing seizures, an abnormal gait and polycystic kidney

4

disease. Due to the severity of Blake's medical conditions, Blake requires round the clock care and supervision.

11. A skilled nursing level of care is required for Blake.

12. The alternative to Blake's skilled nursing care at his residence is hospitalization / institutionalization.

13. Blake resides with his mother, Angela Donegan in LaGrange Park, Illinois. Pursuant to FRCP 17(c), Blake brings this action through his mother and next friend, Angela Donegan.

14. The Defendant, Felicia F. Norwood, is the Director of the Illinois Department of Healthcare and Family Services (HFS). As such she is responsible for the supervision and oversight of HFS medical programs and contractual arrangements. Her responsibilities in this role include the responsibility to ensure compliance with federal law. She is being sued in her official capacity.

## IV. CLASS ACTION ALLEGATIONS

15. Plaintiff brings this action on behalf of himself and as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. This action is brought as a statewide class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2) on behalf of:

> All Medicaid-enrolled children under the age of 21 in the State of Illinois who receive in-home shift nursing services or had received in-home shift nursing services, and when they obtain the age of 21 years are subjected to reduced Medicaid funding which reduces the medical level of care which they had been receiving prior to obtaining 21 years. This class definition does not include those persons who are enrolled in the State of Illinois' Medically Fragile Technology Dependent (MFTD) Medicaid Waiver program.

16. The Class is so numerous that joinder of all persons is impracticable. As of April 1, 2016, approximately 411 children with extensive medical needs received in-home shift nursing

5

services through the Defendant's program commonly referred to as the Nursing and Personal Care Services (NPCS) program.

17. It is also notable that Plaintiffs and Class, as participants in the Medicaid program, have limited financial resources and therefore may be less likely to institute individual actions.

18. The claims of the class members raise common questions of law and fact. These include:

(a) Whether the Defendant violated the ADA and Rehabilitation Act by reducing the level of funding for persons receiving in-home shift nursing services through the Defendant's program commonly referred to as the Nursing and Personal Care Services (NPCS) program which resulted in a reduction of medical services.

(b) Whether the ADA and Rehabilitation Act permits the Defendant to reduce the level of funding which results in a reduction of medical services for disabled persons after the age of 21, even though there has been no change in their medical needs.

(c) Whether a fundamental alteration of the Illinois disability programs would occur if the Defendant provided funding to continue the same level of services for the Plaintiff and the putative class when they turn the age of 21 years.

(d) Whether the Illinois disability programs can reasonably accommodate a modification to their existing programs to allow the Plaintiff and putative class to continue to receive the same level of care in the community when they turn the age of 21 years.

(e) Whether compelling an increase in the "exceptional care rate" for persons exiting the NPCS program into the Illinois Home Services Program is unreasonable under the ADA and Rehabilitation Act.

The common questions of fact and law predominate over questions affecting only individual class members.

19. The Plaintiff's claims are typical of the class members' claims.

20. The Plaintiff will fairly and adequately represent the class because he suffers from deprivation identical to those of the Class members and have been denied the same federal rights that they seek to enforce on behalf of the other Class members.

21. The Plaintiff will fairly and adequately represent the interests of the other Class members, many of whom are unable to pursue claims on their own behalf as the result of their disabilities.

22. Plaintiff's interest in obtaining injunctive relief for the violations of constitutional rights and privileges are consistent with and not antagonistic to those of any person within the Class.

23. Plaintiff's counsel is qualified, experienced and able to conduct the proposed litigation.

24. Prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for the party opposing the Class or could be dispositive of the interests of the other members or substantially impair or impede the ability to protect their interests.

25. A class action is superior to other available methods for the fair and efficient adjudication of the controversy in that:

  (a) A multiplicity of suits with consequent burden on the courts and defendants

should be avoided.

(b) It would be virtually impossible for all Class members to intervene as parties-plaintiffs in this action.

26. The Defendant has acted or refused to act on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief with respect to the Class as a whole.

## V. STATUTORY AND REGULATORY FRAMEWORK

### A. The Americans with Disabilities Act (ADA) and Implementing Regulations

27. In enacting the Americans With Disabilities Act, Congress found that "individuals with disabilities continually encounter various forms of discrimination, including…segregation…." 42 U.S.C. Sec. 12101(a)(5).

28. Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity or be subjected to discrimination by such entity." 42 U.S.C. Sec. 12132.

29. Regulations implementing Title II of the ADA make clear that the ADA requires that: "A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. Sec. 35.130(d).

30. Regulations implementing Title II of the ADA provide: "A public entity may not, directly or through contractual or other arrangements, utilize criteria or other methods of administration: (i) that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; [or] (ii) that have the purpose or effect of defeating or

substantially impairing accomplishment of the objectives of the entity's program with respect to individuals with disabilities. . . ." 28 C.F.R. Sec. 35.130(b)(3).

31. The United States Supreme Court in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), held that the unnecessary institutionalization of individuals with disabilities is a form of discrimination under Title II of the ADA. In doing so, the Supreme Court interpreted the ADA's "integration mandate" to require that persons with disabilities be served in the community when: (1) the state determines that community-based treatment is appropriate; (2) the individual does not oppose community placement; and (3) community placement can be reasonably accommodated. *Id.* at 607.

### B. The Section 504 of the Rehabilitation Act and Implementing Regulations

32. Section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), on which the ADA is modeled, sets forth similar protections against discrimination by recipients of federal funds, such as the Defendant. 29 U.S.C. Secs. 794-794a. These protections include the prohibition against unnecessary segregation of people with disabilities. Regulations implementing the Rehabilitation Act require that a public entity administer its services, programs and activities in "the most integrated setting appropriate" to the needs of qualified individuals with disabilities. 28 C.F.R. Sec. 41.51(d).

## VI. STATEMENT OF FACTS

### A. The Federal/State Medical Assistance Program

33. Medical Assistance, commonly known as Medicaid, is a joint federal and stated funded program enacted to provide necessary medical assistance to needy aged or disabled persons and families with dependent children, whose income and resources are insufficient to

meet the cost of care. 42 U.S.C. Sec. 1396. States choosing to participate in the Medicaid program must operate the program in conformity with federal statutory and regulatory requirements. 42 U.S.C. Sec. 1396a.

34. Each State participating in the Medicaid program must submit a Medicaid plan to the Secretary of Health and Human Services (HHS) for approval. 42 U.S.C. Sec. 1396.

35. Each State must designate a single state agency to administer and / or supervise the administration of the state's Medicaid plan. 42 U.S.C. Sec. 1396a(a)(5).

36. In Illinois, the Department of Healthcare and Family Services (HFS) is the single state agency responsible for administering the Medicaid program.

37. States have the option of covering persons needing home-and-community-based services, if these persons would otherwise require institutional care that would be paid for by Medicaid. 42 U.S.C. Sec. 1396n(c)(1). Under this waiver authority, the Secretary of HHS may grant waivers of specified requirements like service limitations that are otherwise applicable to the State's Medicaid plan. 42 U.S.C. Sec. 1396n(c)(3). Waiver programs must be cost-neutral in that the average cost of providing care for program participants in the home or community based setting must not exceed the estimated average cost of providing care in the institutional setting they would require. 42 U.S.C. Sec. 1396n(c)(2)(D); 42 C.F.R. Sec. 441.302(e).

38. Illinois has implemented a total of nine (9) federally approved home-and-community-based care waiver programs in its Medicaid program which were approved by the Secretary of Health & Human Services (HHS). Two of the nine waiver programs are as follows:

- Children that are Technology Dependent / Medically Fragile (MFTD)

- Persons with Disabilities (Home Services for Adults with Disabilities) (HSP)

**B. Nursing and Personal Care Services (NPCS) Program For Children Under Age 21.**

39. With respect to the NPCS Program for children under the age of 21, the Illinois Department of Healthcare and Family Services (HFS) Division of Medical Program provides services to children under age 21 who have been determined to have extensive medical needs, requiring ongoing skilled nursing in the home setting. Children must meet Medicaid eligibility and live in a private home. Children receiving this NPCS may not be concurrently receiving services under the Medically Fragile, Technology Dependent (MFTD) Home and Community-Based Services (HCBS) waiver. Services are prior approved initially for 60 days with two 50-day renewal periods. After the first 180 days of service, cases are reviewed on 6-month or annual schedules depending on the medical stability of the child. Services are provided by approved Home Nursing Agencies licensed by the Department of Public Health.

40. The eligibility criteria for the NPCS program is as follows:

    a) Children under the age of 21 who have extensive medical needs and require ongoing skilled nursing care as determined by the Department's prior approval process.

    b) U.S. Citizen or legal alien.

    c) Be a resident of the State of Illinois.

    d) Under age 21.

    e) Eligible for the Medical Assistance Program.

    f) Prior approved for services by the Department.

    g) Physician order and justification for services.

**C. Medically Fragile Technology Dependent Waiver Program (MFTD).**

41. Under the waiver program for Medically Fragile, Technology Dependent Children, Illinois pays for home-based care for children under age 21 who have exceptional medical needs. The Illinois Department of Healthcare and Family Services (HFS) administers this waiver program with participation of the University of Illinois' Division of Specialized Services for Children (DSCC) under an agreement with HFS.

42. The Illinois Medicaid Home and Community-Based Services ("HCBS") waiver program, which includes the MFTD program, allows the State of Illinois to provide services to persons, like the Plaintiffs, in an individual's home or community as long as those services prevent the individual from being institutionalized or hospitalized.

43. The MF/TD waiver for children serves persons under 21 years of age who would require institutional care in a hospital or nursing facility, if nursing and waiver services were not provided in the home. Cost-effectiveness for eligibility is compared to service costs in a hospital or nursing facility. The primary expenditure for children in the MFTD waiver is skilled nursing.

**D. Persons with Disabilities** (Home Services Program) (HSP)

44. Under the Home Services waiver program (HSP), Illinois funds services to enable disabled adults to remain in their homes or in a community setting. The Illinois Department of Healthcare and Family Services (HFS) administers the HSP program with the participation of the Division of Rehabilitative Services (DRS) of the Illinois Department of Human Services (DHS) through an agreement with HFS.

**E. Plaintiff Blake Donegan**

45. The Plaintiff, Blake Donegan, turned 21 years of age on February 28, 2016. Blake is medically fragile and currently receives funding from the Defendant for approximately 14

hours a day of in-home shift nursing services at his home (98 hours per week). The in-home shift nursing services provided to Blake are through the NPCS program and are medically necessary. These nursing services are either provided by a registered nurse (RN) or a licensed practical nurse (LPN).

46. Blake has diagnoses of Niemann-Pick Disease Type C and refractory epilepsy which is difficult to control. Blake has ongoing seizures, an abnormal gait and polycystic kidney disease. Due to the severity of Blake's medical conditions, Blake requires round the clock care and supervision.

47. A skilled nursing level of care is required for Blake.

48. The alternative to Blake's in-home shift nursing services at his residence is hospitalization / institutionalization.

49. Blake's current funding from the Defendant comes from the State of Illinois Medicaid Program. Blake receives in-home shift nursing services through the NPCS Program. Blake's funding from the Defendant for in-home shift nursing services is at a cost of approximately $14,000 per month, so that he does not have to be institutionalized or hospitalized for his entire life at a rate of approximately $55,000 per month.

50. Blake's enrollment in the NPCS program is only available to persons under the age of 21 and Blake turned 21years of age on February 28, 2016. When Blake or any disabled person turns 21 in the NPCS program, the Defendant's policy and practice is to reduce continuing medical funding by approximately 50% based solely on the fact that the person is now 21. The reduction in funding is not due to a change in Blake's medical needs but on the fact that Blake's funding at age 21 comes from a different State program, which has significant caps

on funding. The reduction in funding will either result in Blake becoming institutionalized (hospitalized) or if he remains in his family home without skilled nursing care, then he faces a strong possibility of imminent death or a life threatening episode.

51. When Blake turned 21 years of age on February 28, 2016, he is subjected to reduced funding at approximately 50% of his current rate and Blake will be unable to maintain the same level of intensive skilled nursing care which he needs. The State of Illinois through a representative from the Illinois Department of Human Services – Division of Rehabilitative Services, has informed Blake's mother, Angela Donegan, that when Blake turns 21 years of age, that he would be able to receive funding for in-home shift nursing services at a level which is substantially less than the current level which he received prior to his 21st birthday. This State policy of significantly reducing funding for in-home shift nursing services, is in conflict with 5 recent Federal and State court cases, where the Defendant was not permitted to reduce funding for a medically fragile person when he or she turned 21 years of age. (See cases listed in paragraph 3 above).

52. Besides Blake's funding for in-home shift nursing services of approximately 98 hours per week, he also receives funding for a personal assistant through the Illinois Department of Human Services, Home Services Program (HSP). Personal assistant services provide care to Blake when a nurse is not present during any 24 hour period. (If Blake received 8 hours of in-home shift nursing services on a given day, then he could receive 16 hours of personal assistant services on that same day). Blake needs funding for both in-home shift nursing services and personal assistant services to provide 24/7 care.

53. If Blake is unable to receive the current level of in-home shift nursing services in his home and home health care services (personal assistant), then he would be forced to be institutionalized and obtain medical care in a hospital setting at a rate of approximately $55,000 per month, which costs more than his current level of funding in the family home.

54. Blake is requesting injunctive relief to require the Defendant to provide funding to maintain the current level of in-home shift nursing services which he receives in order that he may remain in the community and not be institutionalized or hospitalized for his entire life. The actions of the Defendant constitute unlawful discrimination under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. Sec. 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794(a).

55. Blake is an individual with a disability.

56. Blake is a recipient of Medical Assistance, commonly known as Medicaid.

### VII. CAUSES OF ACTION

### COUNT I

### VIOLATION OF AMERICAN WITH DISABILITIES ACT (ADA) AND 42 U.S.C SECTION 1983

57. The Plaintiff incorporates and re-alleges paragraphs 1-56 as if fully set forth herein.

58. Title II of the American with Disabilities Act (ADA) provides that no qualified person with a disability shall be subjected to discrimination by a public entity. 42 U.S.C. Sec. 42 U.S.C. Sec. 12132. A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. 28 C.F.R. Sec. 35.130(d) (1998). Policies and practices that have the effects of unjustifiably segregating persons with disabilities in institutions constitute prohibited discrimination under the ADA.

59. The Plaintiff is a qualified individual with disabilities within the meaning of Title II of the ADA.

60. The Illinois Department of Healthcare and Family Services of which Defendant Norwood is Director is a "public entity" within the meaning of Title II of the ADA.

61. The actions by HFS constitute unlawful discrimination under 42 U.S.C. Sec. 12132 and violate the integration mandate of the regulations implementing this statutory prohibitions. 28 C.F.R. Sec. 35.130(d).

62. The Defendant's planned reduced funding or actual reduced funding of the in-home shift nursing services which the Plaintiff needs in order to avoid institutionalization, violates Title II of the ADA, 42 U.S.C. Sec. 12132 and its implementing regulation. 28 C.F.R. Sec. 35.130(d).

63. The Plaintiff and the putative class will suffer irreparable injury if the Defendant is not enjoined from reducing the funding when a person turns the age of 21 years, as the reduced level of funding will force the Plaintiff and the putative class into an institution, where they will not receive the most integrated setting appropriate to their needs, or alternatively, the reduced level of funding and remaining at home may lead to their death or serious injury.

64. The Plaintiff and putative class have no adequate remedy at law.

65. The Plaintiff is indigent and unable to post bond.

## COUNT II

## VIOLATION OF REHABILITATION ACT AND 42 U.S.C SECTION 1983

66. The Plaintiff incorporates and re-alleges paragraphs 1-65 as if fully set forth herein.

67. The Rehabilitation Act, 29 U.S.C. Sec. 794, prohibits public entities and recipients of

federal funds from discriminating against any individual by reason of disability. The implementing regulation for the statute requires that public and federally-funded entities provide programs and activities "in the most integrated setting appropriate to the needs of the qualified individual with a disability." 28 C.F.R. Section 41.51(d). Policies and practices that have the effects of unjustifiably segregating persons with disabilities in institutions constitute prohibited discrimination under the Rehabilitation Act.

68. The Illinois Department of Healthcare and Family Services is a recipient of federal funds under the Rehabilitation Act.

69. The Plaintiff is a qualified individual with a disability under Section 504 of the Rehabilitation Act.

70. The actions by HFS constitute unlawful discrimination under 29 U.S.C. Sec. 794(a) and violate the integration mandate of the regulations implementing this statutory prohibition. 28 C.F.R. Sec. 41.51(d).

71. The Defendant's planned reduced funding or actual reduced funding of the in-home shift nursing services which the Plaintiff needs in order to avoid institutionalization, violates Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794(a) and its implementing regulation. 28 C.F.R. Sec. 41.51(d).

72. The Plaintiff and the putative class will suffer irreparable injury if the Defendant is not enjoined from reducing funding when they turn the age of 21 years, as the reduced level of funding will force the Plaintiff and the putative class into an institution, where they will not receive the most integrated setting appropriate to his needs, or alternatively, the reduced level of funding and remaining at home may lead to their death or serious injury.

73. The Plaintiff and putative class have no adequate remedy at law.

74. The Plaintiff is indigent and unable to post bond.

## VIII. REQUEST FOR RELIEF

WHEREFORE, the Plaintiff respectfully request that this Court:

(a) Certify this case to proceed as a class action.

(b) Issue a Declaratory Judgment in favor of the Plaintiff and the Class and that the Defendant's reduction in funding which results in a reduction of medical services (in-home shift nursing services) when aging out of the State of Illinois Nursing and Personal Care Services (NPCS) Program violates the Americans with Disabilities Act, 42 U.S.C. Sec. 12132 and Section 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794(a) and their implementing regulations, 28 C.F.R. Sec. 35.130(d), 41.51(d).

(c) Issue Preliminary and Permanent Injunctive relief requiring the Defendant to restore the level of funding to maintain the existing medical services (in-home shift nursing services) for the Plaintiff and putative class prior to aging out of the State of Illinois Nursing and Personal Care Services (NPCS) Program.

(d) Award Plaintiffs and the Class the costs of this action, including reasonable attorneys' fees, pursuant to 42 U.S.C. Section 12205; Section 504 of the Rehabilitation Act, and 42 U.S.C. Section 1988; and

(e) Award such other relief as the Court deems just and appropriate.

Respectfully submitted,

*/s/ Robert H. Farley, Jr.*
One of the Attorneys
 for the Plaintiff


Robert H. Farley, Jr.
Robert H. Farley, Jr., Ltd.
1155 S. Washington Street
Naperville, IL 60540
630-369-0103
farleylaw@aol.com

Mary Denise Cahill
Cahill & Associates
1155 S. Washington Street
Naperville, IL 60540
630-778-6500
mdcahill@sbcglobal.net