**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BLAKE DONEGAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 16-cv-11178 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| FELICIA NORWOOD, as Director of the | ) | |
| Illinois Department of Healthcare and Family | ) | |
| Services, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' amended motion for class certification [29]. For the reasons set forth below, the Court grants Plaintiffs' amended motion for class certification [29] in part. This case is set for further status hearing on January 12, 2018 at 10:30 a.m.

**I.      Background**

The Plaintiffs in this case are disabled persons who receive funding for in-home shift nursing services from the Illinois Department of Healthcare and Family Services (HFS) through its non-waiver Medicaid program commonly known as the Nursing and Personal Care Services (NPCS) program.[1]   The NPCS program restricts enrollment in the program to persons under the age of 21.   Plaintiffs seek to represent a class of approximately 411 medically fragile disabled individuals who have been found eligible by Defendant for in-home shift nursing services through the NPCS program, but who are not entitled to receive such services through the NPCS program

---

[1] Documents submitted by Defendant indicate that the non-waiver Medicaid program known as the NPCS program is no longer referenced by that name.   [See 54-1.]   However, the parties in this matter have consistently referred to the non-waiver Medicaid program as the NPCS program.   For the sake of clarity, the Court will also refer to the program in this manner.

after they reach the age of 21.[2]   Instead, Plaintiffs and the putative class may seek services through the Home Services Program (HSP).

The NPCS program is related to the Medicaid Act's "early periodic screening, diagnostic, and treatment services" (EPSDT) provision for individuals under the age of 21 (to simplify, the Court will refer to individuals under the age of 21 as "children").   See 42 U.S.C. § 1396a(a)(43). The Medicaid Act's EPSDT provision mandates that states provide payment for any medically necessary service for children.   When an EPSDT screening detects a problem, Medicaid-eligible children receive coverage for all services necessary to "correct or ameliorate" the problem, "whether or not such services are covered under the State plan."   42 U.S.C. § 1396d(r)(5).   This includes in-home shift nursing services.   See 42 U.S.C. § 1396a(a)(43); 1396d(r).   Skilled nursing is an optional service that Illinois' Medicaid Plan does not provide for adults but is required to be provided to children as an EPSDT service.   See 89 Ill. Admin. Code §§ 140.3(c), 140.485.

HSP is "a State and federally funded program designed to allow Illinois residents, who are at risk of unnecessary or premature institutionalization, to receive necessary care and services in their homes, as opposed to being placed in an institution."   89 Ill. Admin. Code § 676.30(j).   The amount of funding that individuals can receive through this program is based on the cost of a nursing home level of care for adults with physical disabilities.   89 Ill. Admin. Code § 679.50. An applicant to HSP is assigned a "Determination of Need" or "DON" score based on his impairment and need for care.   89 Ill. Admin. Code § 676.30(e).   The DON assessment "is made to determine whether or not the individual is at imminent risk of institutionalization, and therefore eligible for placement in a hospital/nursing facility and/or services through HSP."   89 Ill. Admin. Code § 679.10(a).   HSP provides services such as personal assistants, adult day care, homemaker

---

[2] Since this case was filed, Defendant temporarily has agreed not to terminate in-home shift nursing services received by any individual currently enrolled in the program based on his reaching the age of 21.   [See 49.]   This agreement is in effect through December 31, 2017.   *Id.*

services, skilled professional nursing, certified nursing assistants, in-home therapy, home-delivered meals, emergency home response, special medical equipment and supplies, environmental modifications, and respite services. Ill. Admin. Code tit. 89, § 676.40.

Unlike the NPCS program, the amount of funding that an individual can receive for services through HSP is capped by statute. See 89 Ill. Adm. Code § 679.50. HSP differs in a number of other respects from the NPCS program. For example, while individuals in the NPCS program receive services mandated by the Medicaid Act's EPSDT provision, individuals in HSP are not entitled to receive the same services. Another difference between the NPCS program and HSP is how each program determines the amount of funding individuals in each program are entitled to receive for services. For individuals in HSP, state law provides that a "Determination of Need" or "DON" evaluation must be conducted to determine their need for a nursing facility level of care; the amount of funding individuals receive for services through HSP is determined on that basis. For individuals in the NPCS program, on the other hand, it only is necessary to obtain prior approval in order to receive funding for services through the NPCS program—meaning that a consulting physician determines the services are medically necessary and appropriate to meet the participant's needs. 89 Ill. Admin. Code § 140.473(a), (e).

### A.      Class Allegations

Plaintiffs bring claims under the Americans with Disabilities Act (ADA), the Rehabilitation Act (RA), and 42 U.S.C. Section 1983, raising two theories. First, Plaintiffs argue that they are at risk of being institutionalized or suffering serious harm as a result of Defendant's policy of restricting enrollment in the NPCS program to individuals under the age of 21. Although Plaintiffs may be entitled to receive funding for in-home shift nursing services through HSP after they reach the age of 21, the services available through HSP are more limited and are

subject to a cap on funding that does not apply to the NPCS program.  Second, Plaintiffs argue that Defendant is discriminating between disabled persons aging out of the NPCS program and disabled persons aging out of the State of Illinois' Medically Fragile, Technology Dependent (MFTD) program, as disabled persons in the MFTD program continue to receive in-home shift nursing services based on medical necessity after they reach the age of 21 while disabled persons in the NPCS program do not.

As discussed above, Plaintiffs seek to represent a class of approximately 411 medically fragile disabled individuals who have all been found eligible by Defendant for in-home shift nursing services through the NPCS program, but who are not entitled to receive such services through the NPCS program after they reach the age of 21.  Excluded from Plaintiffs' proposed class are "persons who are enrolled in the State of Illinois' Medically Fragile Technology Dependent (MFTD)" program.  [29, at 1.]  The MFTD program exists to serve severely-ill individuals who require a hospital or skilled nursing facility level of care if they do not receive in-home medical care.  89 Ill. Admin. Code § 120.530(b).  By contrast, those enrolled in the NPCS program need only show that they have "an identifiable need for in-home shift nursing services."  [54, at 2.]  Accordingly, those enrolled in the MFTD program receive more benefits than those enrolled in the NPCS program.  [54-1.]

Like the NPCS program, the MFTD program is related to the Medicaid Act's EPSDT provision for children.  See 42 U.S.C. § 1396a(a)(43).  For both the NPCS and MFTD programs, prior approval is required for the provision of in-home shift nursing care.  89 Ill. Admin. Code § 140.472(b); 89 Ill. Admin. Code § 140.473(a).  And for both programs, "[a]pproval will be granted when, in the judgment of a consulting physician * * * the services are medically necessary and appropriate to meet the participant's need."  89 Ill. Admin. Code § 140.473(e).  Thus, those

in the MFTD program do not necessarily receive more in-home shift nursing services than those in the NPCS program. For example, Plaintiffs identified evidence indicating that during the time period from June 1, 2016 to June 30, 2016, there were 220 persons in the MFTD program who were receiving in-home shift nursing services at the same monthly level or at a lower monthly level than named Plaintiff Donegan. [42, at 4.] Plaintiffs also identified evidence indicating that during the time period from June 1, 2016 to June 30, 2016, there were 104 persons in the MFTD program who were receiving in-home shift nursing services at the same monthly level or at a lower monthly level than named Plaintiffs Campbell and Wines. *Id*.

### B. Named Plaintiffs

Prior to turning 21 years of age, named Plaintiffs were enrolled in the NPCS program. Named Plaintiffs continue to receive benefits through the NPCS program as a result of Defendant's agreement in this case not to terminate in-home shift nursing services received by any individual currently enrolled in the program based on his reaching the age of 21. [See 49.] If Defendant did terminate the services that named Plaintiffs receive through the NPCS program, some named Plaintiffs would likely be able to receive funding to maintain some or all of the in-home shift nursing services through HSP. The amount of in-home shift nursing services Plaintiffs would be entitled to receive through HSP would be determined by their respective DON scores.

With respect to Plaintiff Blake Donegan, HFS has tentatively determined that Mr. Donegan would be entitled to receive 24/7 care through HSP based on his prior DON score. Defendant states that this determination is tentative because Mr. Donegan's mother has not completed the application necessary for HSP staff to review and assess his current needs. HSP staff therefore

had to use Mr. Donegan's DON score from last year to arrive at the current tentative determination.

With respect to Plaintiff Antonio Campbell, HFS determined that his DON score was too low to qualify for any benefits from HSP.   Mr. Campbell's DON score indicated that he is able independently to prepare and eat food, bathe himself, dress himself, use the telephone, change his sheets, use the stairs, and take care of his oral hygiene.

 With respect to Plaintiffs Janelle Eaton and Kina Wines, Plaintiffs contend that they would not qualify for the same level of services through HSP that they received through the NPCS program. Ms. Eaton and Ms. Wines have not completed the paperwork necessary for Defendant to determine the amount of services they would be entitled to receive through HSP.   However, they previously submitted applications for benefits through HSP that resulted in DON scores that would only entitle them to a fraction of the monthly budget for in-home shift nursing they received through the NPCS program.   Ms. Eaton and Ms. Wines represent that they did not complete the paperwork required by HSP because it would have been futile to do so, given that they knew they would not receive funding for the same level of in-home shift nursing hours.

## II.    Legal Standard

To be certified as a class action, a proposed class must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and one of the three alternative requirements in Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).   Rule 23(a) provides that a named party may sue on behalf of individuals who are similarly situated if: (1) the class is so numerous that joinder of all putative class members is impracticable ("numerosity"); (2) there are questions of law or fact common to the putative class ("commonality"); (3) the claims or defenses of the named party are typical of the claims or defenses of the putative class members

("typicality"); and (4) the named party will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a). "[A] proposed class must always meet the Rule 23(a) requirements." *Messner*, 669 F.3d at 811. "Because Rule 23(a) provides a gate-keeping function for all class actions, ordinarily we would begin there and only turn our attention to Rule 23(b) after we were certain that all of Rule 23(a)'s requirements had been met." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015).

When certification is sought under Rule 23(b)(2), as it is here, the proponent of the class must also show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Moreover, the class must also meet Rule 23's "implicit requirement of 'ascertainability,'" meaning that the class is "defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015).

Plaintiffs bear the burden of proving that they are entitled to class certification. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Although class certification proceedings are not "a dress rehearsal for the trial on the merits," *Messner*, 669 F.3d at 811, for purposes of deciding the certification question, the Court does not presume that all well-pleaded allegations are true. See *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676–77 (7th Cir. 2001). Rather, before it allows a case to proceed as a class action, the Court "should make whatever factual and legal inquiries are necessary under Rule 23." *Id.* at 676. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2551 (2011). But the showing need not be "to a

degree of absolute certainty. It is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Messner*, 669 F.3d at 811. The Court exercises broad discretion in determining whether class certification is appropriate given the particular facts of the case. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998).

## III.    Analysis

Plaintiffs seek to certify a Rule 23(b)(2) class of:

> All Medicaid-enrolled children under the age of 21 in the State of Illinois who receive in-home shift nursing or had received in-home shift nursing services, and when they obtain the age of 21 years are subjected to reduced Medicaid funding which reduced the medical level of care which they had been receiving prior to obtaining 21 years. This class definition does not include those persons who are enrolled in the State of Illinois' Medically Fragile Technology Dependent (MFTD) Medicaid Waiver program.

[29, at 1.] Plaintiffs present two theories for bringing claims under the Americans with Disabilities Act (ADA), the Rehabilitation Act (RA), and 42 U.S.C. Section 1983. First, Plaintiffs argue that they are being discriminated against because Defendant's policy of restricting enrollment in the NPCS program to individuals under the age of 21 puts Plaintiffs at risk of being institutionalized or suffering serious harm. This theory of discrimination stems from the Supreme Court's decision in *Olmstead v. L.C.*, which held that developmentally disabled individuals should be placed in community settings "when [1] the state's treatment professionals have determined that community placement is appropriate, [2] the transfer from institutional care to a less restrictive setting is not opposed by the affected individual, and [3] the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities." 527 U.S. 581, 587 (1999). Failure to comply with this integration mandate constitutes unlawful discrimination. *Id*. at 597.

Second, Plaintiffs argue that Defendant is discriminating between disabled persons aging out of the NPCS program and disabled persons aging out of the MFTD program, as disabled persons in the MFTD program continue to receive in-home shift nursing services based on medical necessity after they reach the age of 21 while disabled persons in the NPCS program do not.[3] This theory of discrimination stems from language in *Amundson ex rel. Amundson v. Wisconsin Department of Health Services*, which indicates that individuals with disabilities can establish intra-class claims of discrimination by showing that they are being treated worse than persons with other disabilities. 721 F.3d 871, 874 (7th Cir. 2013).

With respect to Plaintiffs' first theory, Defendant does not dispute Plaintiffs' interpretation of *Olmstead*. However, Defendant does argue that Plaintiffs cannot satisfy the requirements of Rule 23(a) or 23(b)(2). For the reasons discussed below, the Court agrees that Plaintiffs fail to satisfy the requirements of Rule 23 with respect to their *Olmstead* theory of discrimination.

With respect to Plaintiffs' second theory, Defendant argues that Defendant misconstrues the meaning of *Amundson*. Specifically, Defendant argues that "Plaintiffs should not be allowed to create a class action under the theory that Defendant does not offer them the exact same care is provided to a non-comparable group of disable persons who have a documented need for a 'higher level' of care that is more 'technology dependent.'" [54, at 2.] According to Defendant, *Amundson* does not provide a basis for finding that a group is being discriminated against simply because they do not receive the exact same benefits as a different group whose medical needs are greater overall. *Id.* at 1. Rather—according to Defendant—Plaintiffs are misconstruing dicta

---

[3] The Court notes that those in the MFTD program have not always been entitled to receive funding for services based on medical necessity after reaching the age of 21. Because the MFTD program also relates to the Medicaid Act's ESPDT provision, enrollment in the program used to be limited to individuals under the age of 21. Individuals in the MFTD program brought a class action against Defendant arguing that they were at risk of being institutionalized as a result of the MFTD program's age limit. [*Hampe v. Hamos*, No. 10-cv-03121 (N.D. Ill.).] As part of a consent decree in that case, Defendant agreed to continue providing services to individuals in the MFTD program after they reached the age of 21.

from a Seventh Circuit case that merely expressed concern over "the notion that a state could provide the 'best available' care to certain disabled groups and 'mediocre' care to certain other disabled groups merely because the latter's care had been more expensive."  *Id*. at 1.

But Plaintiffs' theory is not that they are entitled to "the exact same care" [54, at 2], or must be subject to the same program [34, at 11], but rather that the level of care to which they are entitled should be determined by the same process—uncapped funding based on medical necessity—as the MFTD population.  Thus, even if the programs do not serve comparable populations [54, at 12] and the MFTD population needs a higher level of care than the NPCS/HSP population, it still may be discriminatory under *Amundson* to provide the "best available" care for group A and "mediocre" care for group B.

Ultimately, Defendant's interpretation of *Amundson* may be correct, but that goes directly to the merits of Plaintiffs claim—not to whether Plaintiffs have satisfied the requirements of Rule 23.  Because the Court finds Plaintiff can satisfy Rule 23 with respect to their *Amundson* theory of discrimination if the class definition is altered as provided below, the Court will grant class certification with respect to this theory for the class defined below.

## A.    Mootness

As a threshold matter, the Court must address Defendant's arguments that the claims of named Plaintiffs Kevin Tan and Blake Donegan are moot.   Article III of the Constitution limits federal-court jurisdiction to cases and controversies.   U.S. Const., Art. III, § 2.   "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot."  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990)).   "As long as the parties have a concrete interest, however small, in

the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)).

Mr. Tan passed away on February 27, 2017. Plaintiff recognizes that Mr. Tan's claims for declaratory and injunctive relief therefore are moot. Accordingly, Mr. Tan, through his next friend, seeks to voluntarily withdraw his claim for damages.

With respect to Mr. Donegan, Defendant argues that his claims are moot because Defendant will offer him the same benefits through HSP as he receives through the NPCS program. Plaintiffs dispute this contention, however, citing to documents indicating that the monthly budget proposed by HSP for Mr. Donegan's nursing services is approximately two-thirds of his monthly budget from the NPCS program. [42, at 3 n.2.] Although Defendant indicates that she has tentatively agreed to provide Mr. Donegan the relief he seeks, this agreement is still tentative. Furthermore, Mr. Donegan is not just asking for a certain level of benefits. Rather, Mr. Donegan is asking that his eligibility for in-home shift nursing services be determined based on medical necessity. The Court therefore finds that Mr. Donegan's claims are not moot.

Regardless, Defendant has only argued that the claims of named Plaintiffs Donegan and Tan are moot. That still leaves named Plaintiffs Campbell, Eaton, and Wines. Because at least one of the named Plaintiffs has standing, the Court may certify the class to the extent Rule 23's requirements are otherwise satisfied. *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (holding that only one named plaintiff with standing is necessary to certify a class). Defendant's standing argument does not justify denying class certification.

### B.     Rule 23(b)

Defendant argues that Plaintiffs' proposed class fails to satisfy the requirements of Rule 23(b)(2).[4]   Rule 23(b)(2) permits class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."   Fed. R. Civ. P. 23(b)(2).   "Subsumed in this rule are at least two independent requirements: The contemplated equitable relief must be (1) 'appropriate respecting the class as a whole' and (2) 'final.'" *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 892 (7th Cir. 2011).

Defendant argues that certification under Rule 23(b)(2) is inappropriate because Plaintiffs have not shown that Defendant has acted or refused to act on grounds that apply generally to the class.   However, it is undisputed that those aging out of the NPCS program are no longer entitled to receive EPSTD benefits after reaching the age of 21.   It is also undisputed that HSP—the program that provides services to disabled persons ageing out of the NPCS program—places caps on the amount of funding available for services.   Furthermore, Plaintiffs contend that Defendant treats disabled persons aging out of the NPCS program worse than disabled persons aging out of the MFTD program, as Defendant allows the latter but not the former to continue to receive in-home shift nursing services based on medical necessity after reaching the age of 21.   Plaintiffs request various forms of declaratory and injunctive relief with respect to these class-wide allegations.   [26, at 34.]

With respect to those who are currently receiving benefits through the NPCS program, the Court finds that it could order final equitable relief respecting that group as a whole.   For

---

[4] Given Rule 23(a)'s gatekeeping functions, generally courts analyze the Rule 23(a) factors before turning to whether plaintiffs satisfy one of the 23(b) requirements.   *Bell*, 800 F.3d at 374.   In this case, however, the Court has determined that the class definition must be redefined for the class to satisfy Rule 23(b)(2).   Accordingly, the Court first addresses Rule 23(b)(2)'s requirements.

example, if the Court were to find that Plaintiffs' *Amundson* theory is meritorious, the Court could issue an injunction mandating that Defendant treat disabled persons aging out of the NPCS program similarly as disabled persons aging out of the MFTD program, by allowing both groups to continue receiving in-home shift nursing services based on medical necessity after reaching the age of 21.[5]

However, to the extent the class includes individuals not currently receiving benefits through the NPCS program, the Court finds that it could not order final equitable relief respecting the class as a whole. With respect to individuals not currently receiving benefits through the NPCS program, the Court would have to order that Defendant conduct individual evaluations to determine the amount of services each individual would be entitled to receive if they were still in the NPCS program. Rule 23(b)(2) applies only when a single, indivisible remedy would provide relief to each class member. *Dukes*, 564 U.S. at 362–63. "An injunction is not a final remedy if it would merely lay an evidentiary foundation for subsequent determinations of liability." *Kartman*, 634 F.3d at 893. "That [Plaintiffs] have superficially structured their case around a claim for class-wide injunctive and declaratory relief does not satisfy Rule 23(b)(2) if as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made; this kind of relief would be class-wide in name only, and it would certainly not be final." *Jamie S.*, 668 F.3d at 499 (citation omitted).

Here, by including individuals who no longer receive in-home shift nursing services through the NPCS program in their proposed class definition, Plaintiffs are essentially asking the

---

[5] The Court notes that other pending lawsuits complicate this analysis. For example, Defendant has been enjoined from re-evaluating the medical needs of NPCS beneficiaries due to the *M.A. v. Norwood* lawsuit pending before another court in this district. [Case No. 16-cv-3116, Dkt. 16.] It is unclear how relief ordered in other lawsuits against Defendant affect the merits of Plaintiffs case. To the extent relevant, this should be addressed in any briefing or arguments raised by the parties on the merits.

Court to issue an injunction requiring Defendant to reinstate benefits to those who no longer receive these services. This is not permitted under Rule 23(b)(2). *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 441 (7th Cir. 2015) (indicating that a 23(b)(2) class would be inappropriate where plaintiffs sought "individual relief such as reinstatement or individually calculated damages in the form of back pay and front pay").

Accordingly, the Court finds it necessary to alter the class definition, which the Court can do in its discretion. *In re Motorola Sec. Litig.*, 644 F.3d 511, 518 (7th Cir. 2011). Because the Court would be required to order individualized relief for claims brought on behalf of disabled persons not currently receiving benefits through the NPCS program, the Court will alter Plaintiffs' proposed class to include only those currently receiving in-home shift nursing services through the NPCS program.

## B. Ascertainability

Defendant argues that the class cannot be certified because Plaintiffs' proposed class is overbroad and not ascertainable. Specifically, Defendant argues that Plaintiffs' proposed class definition does not satisfy the ascertainability requirement because (1) the class includes all individuals who were ever enrolled in the NPCS without any time limitation, and (2) the class includes individuals that did not receive in-home shift nursing services after turning 21 yet were not now or ever faced with the risk of institutionalization. For the reasons discussed above, the Court is limiting Plaintiffs' proposed class definition to those currently receiving in-home shift nursing services, which addresses both of Defendant's ascertainability arguments.

However, the Court finds it necessary to further alter Plaintiffs' proposed class definition. To satisfy ascertainability, the class must be "defined clearly and based on objective criteria." *Mullins*, 795 F.3d at 659. "There can be no class action if the proposed class is amorphous or

imprecise." *Id.* (citation omitted). A vague definition is problematic "because a court needs to be able to identify who will receive notice, who will share in any recovery, and who will be bound by a judgment." *Id.* at 660. "To avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* "Rule 23 requires that a class be defined, and experience has led the courts to require that classed be defined clearly and based on objective criteria." *Id.* at 659.

Given that Plaintiffs' proposed class is limited to individuals who are subjected to a reduced level of medical care when they reach the age of 21, the Court would have to compare the level of care received by each putative class member prior to their reaching the age of 21 to the level of care that they would be entitled to receive after they reach the age of 21 to determine if they fall within the scope of Plaintiffs' proposed class definition. Based on the information before the Court, it is not apparent that this analysis could even be done for children who have yet to apply for services through HSP.[6] The Court finds that a more precise class definition is necessary "to identify who will receive notice, who will share in any recovery, and who will be bound by a judgment." *Mullins*, 795 F.3d at 660. Accordingly, the Court concludes that the following class definition best comports with the nature of Plaintiffs' claims and the requirements of Rule 23:

> All persons in the state of Illinois who have been approved by Defendant for in-home shift nursing services when they were Medicaid-eligible children under the age of 21 through the nonwaiver Medicaid program, formerly known as the Nursing and Personal Care Services (NPCS) program, and who are currently receiving such services. This class definition does not include those persons who are enrolled in the State of Illinois' Medically Fragile Technology Dependent (MFTD) Medicaid Waiver program.

---

[6] If Plaintiffs were able to demonstrate that this analysis could be conducted in an objective and precise manner, the Court can alter the class definition any time before final judgment. Fed. R. Civ. P. 23(c)(1)(C).

### C.    Rule 23(a)

#### 1.    *Numerosity*

The first requirement under Rule 23(a) is that the putative class be "so numerous that joinder of all members is impracticable."    Fed. R. Civ. P. 23(a)(1).    "While there is no threshold or magic number at which joinder is impracticable, a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes."    *Ringswald v. County of DuPage*, 196 F.R.D. 509, 512 (N.D. Ill. 2000) (citations omitted).    Further, "a plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates."    *Barragan v. Evanger's Dog & Cat Food Co., Inc.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009).    Courts rely on "common sense" to determine whether an estimate of class size is reasonable; however, estimates "may not be based on pure speculation."    *Murray v. E*Trade Fin. Corp.*, 240 F.R.D. 392, 396 (N.D. Ill. 2006); see also *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir.1989) (recognizing that "plaintiffs are not required to specify the exact number of persons in the class"); *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir.1978) ("The difficulty in determining the exact number of class members does not preclude class certification.").

Where there are relatively few members in the putative class, "courts consider a number of factors in addition to class size in order to determine whether the numerosity requirement is met." *O'Brien v. Encotech Const. Servs., Inc.*, 203 F.R.D. 346, 350 (N.D. Ill. 2001).    This includes "judicial economy, the size of the individual claims, the financial resources of class members, the ability of claimants to bring individual lawsuits, and the geographic disbursement of the putative plaintiffs."    *Id.* (citation omitted); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2000 WL 1774091, *4 (N.D. Ill. Dec.1, 2000)).

Here, Plaintiffs have submitted evidence indicating that as of April 1, 2016, there were 411 children receiving services from the NPCS program. [29-1, at 1.] Most—if not all—of these individuals would fall within the Court's altered class definition. This is sufficient to satisfy Rule 23(a)'s numerosity requirement.

Even if there were a relatively small number of individuals that fell within the scope of the altered class definition, the Court would still find that joinder would be impracticable because of the particular circumstances of the proposed class members in this case. Plaintiffs and the class have health issues and limited financial resources (as evidenced by their participation in the Medicaid program), making it is less likely that they would bring individual suits. *N.B. v. Hamos*, 26 F. Supp. 3d 756, 769 (N.D. Ill. 2014) ("The putative class consists of an extremely vulnerable population because of their youth—in most cases, the plaintiffs would need an adult next friend to initiate suit—severe health issues, and limited financial means, all of which make individual suits impracticable."). Furthermore, given that the class includes individuals across the entire state, it would be impracticable to expect Plaintiffs and the class to participate in one lawsuit even if joinder could be accomplished. *Id.*; see also *Fields v. Maram*, 2004 WL 1879997, at *5 (N.D. Ill. Aug. 17, 2004) ("Because the class members reside throughout the state, and because they are disabled and therefore are often of limited financial resources, joinder would be particularly difficult in this case."). Accordingly, the Court finds that Plaintiffs have satisfied Rule 23(a)'s numerosity requirement because the class is "so numerous that joinder of all members is impracticable."

### 2. *Commonality*

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). Only one common question is necessary to satisfy Rule 23(a)'s commonality

requirement. See *Dukes*, 131 S. Ct. at 2556 ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do." (citation, internal quotation marks and alterations omitted)); *Walker v. Bankers Life & Cas. Co.*, 2007 WL 2903180, *4 (N.D. Ill. Oct. 1, 2007) ("Not all factual or legal questions raised in a lawsuit need be common so long as a single issue is common to all class members."). However, superficial common questions—like whether each class member shares a characteristic or "suffered a violation of the same provision of law"—are not enough. *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012) (quoting *Dukes*, 131 S. Ct. at 2551). Commonality thus requires a common issue capable of class-wide resolution, "which means a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. Thus, in order to bring otherwise highly individualized claims as a class, the class must establish systemic violations or an illegal policy. *Jamie S.*, 668 F.3d at 497.

Here, Plaintiffs set forth a list of common questions that they contend are each sufficient to satisfy Rule 23(a)'s commonality requirement:

a) Whether the Defendant violated the ADA and Rehabilitation Act by reducing the level of funding for persons receiving in-home shift nursing services through Defendant's program commonly referred to as the Nursing and Personal Care Services (NPCS) program which resulted in a reduction of medical services.

b) Whether the Defendant discriminates against the Plaintiffs and putative Class by treating them worse than person with other disabilities.

c) Whether the Defendant discriminates against the Plaintiffs and putative Class when they age out of the NPCS program at the age of 21, as they receive disparate treatment from those persons who age out of the MFTD Waiver program at age 21.

d) Whether the Defendant by providing Medicaid benefits of in-home shift nursing based on medical necessity to those persons aging out of the MFTD Waiver program and not providing in-home shift nursing services based on medical necessity to those persons aging out of the NPCS program is unlawful discrimination under the ADA.

e) Whether the ADA and Rehabilitation Act permit the Defendant to reduce the level of funding which results in a reduction of medical services for disabled persons after the age of 21, even though there has been no change in their medical needs.

f) Whether a fundamental alteration of the Illinois disability programs would occur if the Defendant provided funding to continue the same level of services for the Plaintiffs and the putative Class when they turn the age of 21 years.

g) Whether the Illinois disability programs can reasonably accommodate a modification to their existing programs to allow Plaintiffs and the putative Class to continue to receive the same level of care in the community when they turn the age of 21 years.

h) Whether compelling an increase in the "exceptional care rate" for persons exiting the NPCS program into the Illinois Home Services Program is unreasonable under the ADA and Rehabilitation Act.

[29, at 2-3; 30, at 9.] With respect to the questions relating to Plaintiffs' *Amundson* theory—questions (b), (c), and (d)—Defendant does not specifically address whether any of these questions are capable of class-wide resolution, thereby satisfying Rule 23(a)'s commonality requirement. Rather, Defendant generally contends that Plaintiffs' *Amundson* theory is legally deficient. In *Amundson*, the Seventh Circuit indicated that disabled persons might be able to establish discriminatory conduct under the ADA and Rehabilitation Act by showing that they are being treated worse than another group of disabled persons. 721 F.3d at 874-75. Defendant argues that Plaintiffs cannot proceed on under this theory of discrimination because those in the MFTD program have greater medical needs overall, making those in the MFTD program an inappropriate comparison group. [54, 1-2.] Whether those in the MFTD program are an appropriate comparison group to those in the NPCS program, however, is a merits question that is capable of class-wide resolution.[7] Indeed, the answers to questions (b), (c), and (d) would determine on a class-wide basis whether Plaintiffs could establish discrimination under the theory

---

[7] If for some reason it later becomes apparent that these merits questions cannot be determined on a class-wide basis, the Court may always decertify the class. *Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 558 (7th Cir. 2016) (affirming district court's decision to decertify a Rule 23(b)(2) where there was no "proof of a systemic practice which could tie all the claims together").

set forth in *Amundson*.[8]   Thus, with respect to Plaintiffs' *Amundson* theory, Plaintiffs have satisfied Rule 23(a)'s commonality requirement.

With respect to the questions relating to Plaintiffs' *Olmstead* theory, however, Plaintiffs have not identified any issues that can be resolved on a class-wide basis.   Again, Defendant does not address whether the specific questions identified by Plaintiffs relating to their *Olmstead* theory are capable of being addressed on a class-wide basis.   Instead, Defendant generally contends that Plaintiffs fail to identify any standardized conduct on the part of Defendant, making any class-wide determination impossible.   [34, at 11.]   Defendant contends that "[t]here is no evidence that anyone in the NPCS program was subjected to a uniform policy that cuts in half or by some other substantial amount the level of in-home shift nursing services" for those turning 21. *Id*.   The Court disagrees that those aging out of the NPCS program are not subjected to a uniform policy.   Those enrolled in the NPCS program are entitled to receive in-home shift nursing services based on medical necessity—as part of the state's EPSDT obligations—while those who age out of the NPCS program are not.   This is precisely why the Court is certifying a class with respect to Plaintiffs' *Amundson* theory.

But Plaintiffs have not identified any way to determine on a class-wide basis that named Plaintiffs and the putative class are at risk of being institutionalized as a result of this policy, which would be necessary to establish their claims based on their *Olmstead* theory.[9]   After reviewing the

---

[8] The Court finds that questions (a) and (e), standing alone, are too broad to satisfy Rule 23(a)'s commonality requirement.   When viewed in conjunction with more specific questions (b), (c), and (d), the Court finds these questions raise common issues that can be established on a class-wide basis.   With respect to questions (f), (g), and (h)—which relate to whether Plaintiffs and the putative class can be reasonably accommodated and to Defendant's fundamental alteration defense—the Court finds that these questions only are capable of class-wide resolution to the extent that they relate to systemic failures or illegal conduct that can also be proven on a class-wide basis.   Thus, to the extent these questions relate to Plaintiffs' *Amundson* theory, the Court finds that these questions are capable of class-wide resolution.   To the extent these questions relate to Plaintiffs' Olmstead theory, on the other hand, the Court finds that these questions are not capable of class-wide resolution.

[9] Plaintiffs rely extensively on *Hampe v. Hamos*, which held that Rule 23(a)'s commonality requirement was satisfied

initial briefing on Plaintiffs' amended motion for class certification, the Court was not satisfied that any named Plaintiffs or putative class members were at risk of institutionalization. Without any indication that any of the named Plaintiffs or putative class members were at risk of institutionalization, it would be difficult to find that there is a systemic risk of institutionalization as a result of Defendant's policy. But in order to bring otherwise highly individualized claims as a class, the class must establish systemic violations or an illegal policy. *Jamie S.*, 668 F.3d at 497.

The Court requested supplemental briefing on the issue to give Plaintiffs another opportunity to establish the kind of systemic risk that would be necessary to satisfy Rule 23(a)'s commonality requirement. In Plaintiffs' supplemental brief, Plaintiffs contend that "Plaintiffs Donegan, Campbell, Eaton and Wines were at risk of institutionalization at the time of the filing of the Complaint and are still at risk of institutionalization without receiving the necessary medically required in-home shift nursing services," [51, at 3], but Plaintiffs do not offer any evidence supporting this contention. Instead, Plaintiffs argue that because Defendant determined the in-home shift nursing services were deemed "medically necessary" for Plaintiffs in the NPCS program, Plaintiffs are at risk of being institutionalized if they no longer receive these "medically necessary" services. But "necessary medical care"—as defined by the relevant statute—is not defined as care necessary to prevent institutionalization. "'Necessary medical care' is that care

---

because there was a "common nucleus of operative fact." 2010 U.S. Dist. LEXIS 125858, at *9. In that case, the court certified a class of disabled persons in the MFTD program bringing discrimination claims based on their claimed risk of institutionalization. However, unlike the named Plaintiffs in this case, the named Plaintiff in *Hampe* presented evidence that he was at risk of institutionalization. Furthermore, individuals are only eligible for the MFTD program if Defendant found that they "would require a level of care provided in a hospital or skilled nursing facility" but for the provision of in-home services, demonstrating that the MFTD population is categorically at risk of being institutionalized without receiving appropriate services. Finally, *Hampe* was decided before *Wal-Mart Stores v. Dukes*, which made clear that the common nucleus of operative facts "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 564 U.S. 338, 350 (2011). Because *Hampe* did not focus on whether there were class-wide questions capable of producing class-wide answers—as mandated by *Dukes*—the Court finds the case of limited persuasiveness.

which is generally recognized as standard medical care required because of disease, disability, infirmity or impairment." 89 Ill. Admin. Code § 140.2(b).

Plaintiffs also attempted to show that they are at risk of being institutionalized by arguing that because there are some individuals in the MFTD program receiving the same number of hours of in-home shift nursing services as Plaintiffs, and because individuals are only eligible for the MFTD program if Defendant found that they "would require a level of care provided in a hospital or skilled nursing facility" but for the provision of in-home services, it must also be true that Plaintiffs also would otherwise require "a level of care provided in a hospital or skilled nursing facility." Plaintiffs admit, however, that individuals in the NPCS program ***do not*** have to show that but for the provision of in-home care, they would require a level of care provided by a hospital or skilled nursing facility. [51, at 3.] Named Plaintiffs therefore have failed to provide any evidence indicating that any of them are at risk of being institutionalized.

The Court recognizes that Plaintiffs' claimed risk of institutionalization is part of the merits analysis of their claims based on *Olmstead*, but analyzing Rule 23's requirements frequently entails resolution of merits issues. *Jaime S.*, 668 F.3d at 493. Before the Court allows a case to proceed as a class action, it "should make whatever factual and legal inquiries are necessary under Rule 23." *Szabo*, 249 F.3d at 676. Here, where Plaintiffs have not presented evidence sufficient to conclude that any named Plaintiffs are at risk of being institutionalized, it is difficult for the Court to find that there is a systemic risk of institutionalization resulting from Defendant's policy.

Plaintiffs have likewise failed to provide any evidence indicating that any significant portion of the putative class are at risk of being institutionalized. Plaintiffs only identified one putative class member Matthew Kaye who they claim is at risk of being institutionalized as a result of Defendant's policy. Plaintiffs offer a doctor's affidavit substantiating this claim. Defendant

contests this conclusion, pointing to the fact that even though Mr. Kaye may not be entitled to receive the same number of in-home shift nursing hours after reaching the age of 21, he will be able to receive the assistance of a Home Health Aide who will be able to provide the services Mr. Kaye needs. Defendant further points to the fact that Mr. Kaye's administrative appeal is still pending and the fact that Mr. Kaye is also receiving benefits through a separate waiver program administered by the Division of Developmental Disabilities to challenge Plaintiffs' claim that Mr. Kaye is at risk of institutionalization. Even assuming that Plaintiffs are correct that Mr. Kaye is at risk of being institutionalized, it is clear from this discussion that determining whether any putative class members are at risk of being institutionalized would be a highly individualized fact determination—making class certification with respect to Plaintiffs' *Olmstead* theory inappropriate.

Given that Plaintiffs have only presented evidence indicating that one putative class member is at risk of institutionalization, the Court finds that Plaintiffs have failed to show the kind of systemic failure or illegal policy necessary to establish commonality under Rule 23(a) with respect to Plaintiffs' *Olmstead* theory.[10]

### 3. *Typicality*

The Court finds that Plaintiffs have satisfied Rule 23(a)'s typicality requirement with respect to their *Amundson* theory, but not with respect to their *Olmstead* theory. Claims of the class representatives and class members are typical if they arise from the same practice or course

---

[10] The Court is not saying that *Olmstead* claims can never be raised in a class action. It is possible that a class may be able to identify a systemic failure or policy that is linked to their claimed risk of institutionalization. For example, in *Colbert v. Blagojevich*, the court held that Plaintiffs satisfied the commonality element where they sought "to require defendants to enact standardized policies and procedures for placing eligible disabled individuals in the community" to satisfy *Olmstead's* integration mandate. 2008 WL 4442597, at *5 (N.D. Ill. Sept. 29, 2008). Should Plaintiffs identify this kind of systemic failure, Plaintiffs could again seek to certify a class under an *Olmstead* theory. Based on the facts before the Court now, however, the Court does not find the kind of systemic violation sufficient to establish commonality under Rule 23(a). The same is true with respect to the Court's typicality and adequacy of representation analysis.

of conduct and are based on the same legal theory. *Keele*, 149 F.3d at 595. Typicality and commonality are closely related. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996). Typicality is meant to ensure that the claims of the class representatives have the "same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). "The essence of the typicality requirement is captured by the notion that as goes the claim of the named plaintiff, so go the claims of the class." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (internal quotations omitted).

In arguing that named Plaintiffs' claims are not typical of the class, Defendant argues that the named Plaintiffs' claims cannot be typical of the class when they are not even typical of each other. In making this argument, Defendant identifies factual difference between the type of care needed by each named Plaintiff, the amount of care each named Plaintiff is entitled to receive through other programs such as HSP, and the efforts (or lack thereof) that each named Plaintiff has made to ensure that they receive care though other programs such as HSP.

With respect to Plaintiffs' theory of discrimination based on *Amundson*, none of these factual differences identified by Defendant are relevant to the legal theory presented by Plaintiffs. Plaintiffs claim that the level of care they receive should be determined through the same process used to determine the level of care provided to another group of disabled individuals—the medical necessity analysis used to determine the services those in the MFTD program are entitled to receive. Determining whether Plaintiffs have stated a valid cause of action under this theory does not require an examination of each class member's individual situation. Class members individual medical problems are irrelevant where the issue is the process used to determine what

services class members are entitled to receive. *NB. v. Hamos*, 26 F. Supp. 3d 756, 771 (N.D. Ill. 2014) ("If the services are 'medically necessary,' the origin of the condition is irrelevant."). The named Plaintiffs' claims relating to their theory of discrimination based on *Amundson* arise from the same policy of Defendant and are based on the same legal theory—namely, that Plaintiffs illegally discriminate against those in the NPCS program by not allowing them to continue to receive services based on medical need after reaching the age of 21, while those in the MFTD program are allowed to continue to receive services based on medical need after reaching the age of 21. Thus, the Court finds that Plaintiffs have satisfied Rule 23(a)'s typicality requirement with respect to their *Amundson* theory of discrimination.

With respect to Plaintiffs' theory of discrimination based on *Olmstead*, however, Defendant's argument is well taken. In determining whether Plaintiffs are at risk of institutionalization, the factual differences relating to the type of care needed by each Plaintiff, the amount of care each Plaintiff is entitled to receive through other programs such as HSP, and the efforts (or lack thereof) that each Plaintiff has made to ensure that he or she receives care though other programs such as HSP all become relevant. Based on these factual differences, it cannot be said that as go the claims of named plaintiffs, so go the claims of the class. Furthermore, it is possible (or even likely based on the evidence before the Court) that none of the named Plaintiffs are at risk of institutionalization, yet members of the class are at risk of institutionalization and can establish an Olmstead claim. It cannot be said that named Plaintiffs' claims are typical of the class in that situation. The Court therefore finds that Plaintiffs fail to satisfy Rule 23(a)'s typicality requirement with respect to their *Olmstead* theory.

### 4.    *Adequacy of Representation*

Finally, the Court finds that Plaintiffs have satisfied Rule 23(a)'s adequacy of representation argument with respect to their *Amundson* theory, but not with respect to their *Olmstead* theory.   Before a class will be certified, Rule 23(a)(4) requires that named plaintiffs show that "the representative parties will fairly and adequately protect the interests of the class." For the adequacy requirement to be satisfied, the claims and interests of the named Plaintiffs must not conflict with those of the class, the class representatives must have sufficient interest in the outcome of the case, and class counsel must be experienced and competent.   *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

Here, Defendant does not argue that class counsel is not sufficiently experienced or competent.   Indeed, based on the Court's own experience with Plaintiffs' counsel and prior determinations of counsel's adequacy in similar class actions before other courts, see, *e.g., Hampe v. Hamos*, 2010 U.S. Dist. LEXIS 125858 (N.D. Ill. Nov. 22, 2010) (finding the same counsel to be fit to serve as class counsel), the Court finds that Plaintiffs' counsel is sufficiently experienced and well-versed in the subject matter to adequately represent the class.

Defendant argues that Mr. Donegan and Mr. Tan do not have a sufficient interest in the outcome of the case, as their claims are moot.   [34, at 13.]   Defendant also argues that Mr. Campbell will not be an adequate class representative, because he will have to spend too much time explaining how he is at risk of being institutionalized when "he can feed, bathe, and dress himself."   *Id*.   Similarly, Defendant argues that Ms. Eaton and Ms. Wines will not be adequate class representatives, because they will have to devote too much time "explaining why the State violated the ADA and the Rehabilitation Act even though they did not apply for the services they claim they need."   *Id*.

With respect to Plaintiffs' *Amundson* theory, the Court finds these arguments are without merit.   As discussed above, the Court finds that Mr. Donegan's claims based on *Amundson* are not moot, as Mr. Donegan is requesting that the benefits he receives be determined based on medical necessity and not based on his DON score.[11]   Furthermore, the specific defenses identified by Defendant are related to Plaintiffs' *Olmstead* theory, not their *Amundson* theory.   Thus, the Court finds that named Plaintiffs are adequate class representatives with respect to their *Amundson* theory.

With respect to Plaintiffs *Olmstead* theory, the Court finds Defendant's arguments to be more persuasive.   To begin, the Court agrees that Plaintiff will not be able to serve as an adequate class representative for discrimination claims based on the risk of institutionalization, as the evidence before the Court does not indicate in any manner that Mr. Campbell is at risk of institutionalization.   In fact, the Court finds that none of the named Plaintiffs will be able to serve as adequate class representatives for discrimination claims based on the risk of institutionalization. As discussed above, there is no evidence before this Court indicating that named Plaintiffs are at risk of institutionalization.   Again, the Court notes that this determination is closely tied to the merits of Plaintiffs claims.   Nonetheless, it cannot be said that named Plaintiffs have a sufficient interest in pursuing discrimination claims under *Olmstead* when they are not themselves at risk of institutionalization.   The Court therefore finds that named Plaintiffs cannot adequately represent class members who might be able to establish discrimination based on the risk of institutionalization.

The Court also finds it problematic that some named Plaintiffs failed to complete the paperwork required by HSP.   It is not apparent at this time, however, that this failure presents any

---

[11]  To the extent Plaintiff Tan's claims are moot, Plaintiffs have already agreed that Mr. Tan should be dismissed from this case.

conflict of interest between these named Plaintiffs and the class. It therefore is premature to deny certification on that basis. *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 680 (7th Cir. 2009) ("To deny class certification now, because of a potential conflict of interest that may not become actual, would be premature." (citations omitted)).

## III. Conclusion

For the foregoing reasons, the Court grants Plaintiffs' motion for class certification [29] in part. The Court certifies the following class of individuals with respect to Plaintiffs' *Amundson* theory of discrimination:

> All persons in the state of Illinois who have been approved by Defendant for in-home shift nursing services when they were Medicaid-eligible children under the age of 21 through the nonwaiver Medicaid program, formerly known as the Nursing and Personal Care Services (NPCS) program, and who are currently receiving such services. This class definition does not include those persons who are enrolled in the State of Illinois' Medically Fragile Technology Dependent (MFTD) Medicaid Waiver program.

This case is set for further status hearing on January 12, 2018 at 10:30 a.m.

Dated: December 21, 2017

_____
Robert M. Dow, Jr.
United States District Judge