# EXHIBIT "A"
# Proposed Settlement Agreement

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| **BLAKE DONEGAN,** by and through his mother, ANGELA DONEGAN, **ANTONIO CAMPBELL,** by and through his mother, SHANEATHA ROLLING, **JANELLE EATON,** by and through her mother, JACQUELINE EATON and **KINA WINES,** by and through her mother, SHARON QUINN, individually and on behalf of a class, | ) ) ) ) ) ) ) ) | No. | 16-11178 |
| Plaintiffs, | ) ) ) | Judge: | Robert M. Dow, Jr. |
| vs. | ) ) | Magistrate: | Sheila Finnegan |
| **PATRICIA R. BELLOCK**, in her official capacity as Director of the Illinois Department of Healthcare and Family Services, | ) ) ) ) ) | | |
| Defendant. | ) | | |

## SETTLEMENT AGREEMENT

1. Plaintiffs Blake Donegan by and through his mother/guardian Angela Donegan, Antonio Campbell, by and through his mother/guardian Shaneatha Rolling, Janelle Eaton, by and through her mother/guardian Jacqueline Eaton, Kina Wines, by and through her mother/guardian Sharon Quinn, on their own behalf and a class of others similarly situated, and Defendant Patricia R. Bellock, in her official capacity as Director of the Illinois Department of Healthcare and Family Services (HFS), hereby file this Settlement Agreement to resolve the claims raised in the Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief, alleging violations of Title II of the Americans with Disabilities Act (42 U.S.C. § 12132, 28 C.F.R. § 35.130), Section 504 of the Rehabilitation Act (29 U.S.C. § 794(a), 28.C.F.R. § 41.51), and 42 U.S.C. § 1983.

2. Plaintiffs in this case are disabled persons who receive funding for in-home shift nursing services from HFS through its non-waiver Medicaid program commonly known as the

Nursing and Personal Care Services (NPCS) program, and who, upon attaining 21 years of age, were no longer eligible for the NPCS program and were allegedly subjected to reduced Medicaid funding for in-home shift nursing services.

3. Defendant is the Director of the Illinois Department of Healthcare and Family Services, which is the agency responsible for overseeing and implementing Illinois' Medical Assistance or Medicaid program pursuant to 42 U.S.C. § 1396(a)(5).

4. Plaintiffs allege, *inter alia*, that Defendant is discriminating between disabled persons aging out of the NPCS program and disabled persons aging out of the State of Illinois' Medically Fragile, Technology Dependent (MFTD) program, as disabled persons in the MFTD program continue to receive in-home shift nursing services based on medical necessity after they reach the age of 21 while disabled persons in the NPCS program do not. Plaintiffs allege that Defendant's policy violates Title II of the Americans with Disabilities Act, 42 U.S.C. 12132, and the Rehabilitation Act, 29 U.S.C. 794.

5. By Order dated December 21, 2017, the Court certified this case to proceed as a class action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of "[a]ll persons in the state of Illinois who have been approved by Defendant for in-home shift nursing services when they were Medicaid-eligible children under the age of 21 through the nonwaiver Medicaid program, formerly known as the Nursing and Personal Care Services (NPCS) program, and who are currently receiving such services. This class definition does not include those persons who are enrolled in the State of Illinois' Medically Fragile Technology Dependent (MFTD) Medicaid Waiver program."

6. Defendant denies the allegations of Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief and further denies any violations of statutes or regulations. Defendant makes

no admission of liability, and nothing herein shall be deemed an admission of fault of any kind by Defendant.

7.  The parties have stated their desire to resolve this matter amicably and without going to trial.

8.  The parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1345.

9.  The parties agree that the issue in this case is limited to individuals who age out of the NPCS program upon attaining 21 years of age and are no longer eligible for in-home shift nursing services in the NPCS program due to the inapplicability of the Early Periodic Screening, Diagnostic and Treatment (EPSDT) requirement of title XIX of the Social Security Act. The parties further agree that the NPCS program and eligibility for the NPCS program for those who have not yet attained the age of 21 years is not the subject of this litigation and that any actions taken by Defendant with respect to the NPCS program and eligibility for the NPCS program are not material to this action. Nothing in this Settlement Agreement is intended to prevent or direct any changes to the NPCS program for persons prior to the date they attain the age of 21 years.

10. This Settlement Agreement shall not override or supersede any requirements or restrictions established by Title XIX, federal law, federal regulation, state law, state regulation, or the federal Centers for Medicare and Medicaid Services (CMS), including the extent to which any procedure and/or covered service available under this Settlement Agreement may require or be subject to federal approval by federal CMS in accordance with Title XIX. Any service covered pursuant to this Settlement Agreement must be eligible for Federal Financial Participation in accordance with the provisions of Title XIX and receive proper approval by federal CMS. The terms of this Settlement Agreement shall not require Defendant to cover or fund any services that

the individual did not receive, or for which the individual was not eligible, prior to attaining 21 years of age. The terms of this Settlement Agreement shall not require Defendant to cover Class Members under any specific program, or federal financing mechanism. Defendant shall have the flexibility to work with the federal government to determine the most appropriate financing mechanism.

11. For all Class Members under the age of 21 years, HFS will evaluate such individuals for the Medically Fragile Technology Dependent Children ("MFTD")'s waiver program, in accordance with existing standards and requirements, either (a) upon the request of this individual, his or her family, or other person authorized to make such a request at any time prior to six months before this individual reaches the age of 21 years; or (b) with the permission of this individual, his or her family, or other person authorized to make such a decision, at any time prior to six months before this individual reaches the age of 21 years.

12. For the named Plaintiffs and Class Members who had been participating in the NPCS program prior to reaching the age of 21 years, but whose in-home shift nursing services were continued past the age of 21 per the agreement(s) filed with the Court in this litigation, HFS will agree to evaluate these individuals for the MFTD program, in accordance with existing standards and requirements. Each such individual or other authorized person shall have thirty (30) days from the date this settlement agreement has been given final approval by the Court, to notify Defendant that he or she seeks an evaluation and HFS shall have ninety (90) days after the request to complete the evaluation.

13. If a request for an evaluation, or permission for an evaluation, is not made or provided as described in Paragraphs 11 or 12, HFS shall not be required to evaluate, determine, approve, or grant that individual in-home shift nursing services or any further relief in or pursuant

to this Settlement Agreement.

14. If any Class Member evaluated for in-home shift nursing services pursuant to this Settlement Agreement is denied eligibility for the MFTD waiver program or, after such eligibility is established, is approved for in-home nursing services in an amount that is disputed by the individual, the individual's sole recourse to challenge the denial or amount of services shall be through the existing rules, provisions, and procedures for an administrative hearing, and if appropriate, judicial review in the State courts pursuant to applicable law.

15. Any Plaintiff or Class Member may choose to forego the relief provided in paragraphs 11 and 12 of this Settlement Agreement and instead make application to and participate in the Home Services Program (HSP) operated by the Department of Human Services. Any individual may choose to forego any services that Defendants offers as a result of an MFTD program evaluation and instead make application to and participate in the HSP. Any individual who participates in the HSP after foregoing the relief and/or services provided in this Settlement Agreement, including but not limited to availing the Class Member of the process for an evaluation for the MFTD program in accordance with an paragraphs 11 or 12, shall be required to comply with all rules and requirements of the HSP, and this Settlement Agreement shall not require any particular amount or type of service to be provided to any individual who chooses to participate in the HSP.

16. Nothing in this Settlement Agreement shall prohibit any named Plaintiff or Class member who has been denied eligibility for the MFTD waiver program pursuant to an evaluation for the MFTD program conducted pursuant to paragraphs 11 or 12 from seeking application to, and services under, the HSP. Defendant agrees that, for any named Plaintiff or Class Member eligible for and participating in the HSP who was denied MFTD eligibility after an evaluation

5

conducted pursuant to paragraphs 11 or 12, DHS will be allowed to authorize, through a request by DHS to HFS, an increase to an individual Service Cost Maximum or Exceptional Care Rate by a reasonable amount if DHS has determined that the increase is appropriate and necessary to cover in home nursing services needed to maintain the Class Member in the community within the parameters of the existing program. The authorization of any DHS request for such an increase for class members shall not change or modify any eligibility, operational, financial, or other programmatic requirements or provisions in the existing HCBS waiver of the Home Services Program. The terms of this paragraph create no obligation on the Defendant or DHS with regard to any Plaintiff or Class Member who foregoes an evaluation for the MFTD, or foregoes any services that Defendant offers under MFTD, pursuant to paragraphs 11 or 12 above.

17. Nothing in this Settlement Agreement shall require or permit any individual to (1) participate in both the MFTD program and the HSP at the same time, and/or (2) participate in the NPCS program after turning 21 years old. Further, nothing in this Settlement Agreement shall require any particular amount or level of services to be provided, or continue to be provided, to any Plaintiff or Class Member who participates in the MFTD program, the HSP, or any other program.

18. Plaintiffs and Class members who are dissatisfied with any eligible service planning issue shall have the right to appeal under the administrative processes set forth in the applicable state administrative rules. Plaintiffs and Class Members shall retain all applicable State appeal rights for any disputes over amount, level, need, or eligibility for services or programs.

19. Nothing in this Settlement Agreement shall operate to limit any individual's freedom of choice as required by Title XIX of the Social Security Act.

20. Defendant shall provide to Plaintiffs' counsel, upon a reasonable request and within

a reasonable time frame, identifying information as to the Class Members and evidence of compliance with the Settlement Agreement. Class Counsel may request information from Defendant that is reasonably necessary for them to assess Defendant's compliance with the Settlement Agreement. If the parties cannot resolve disputes regarding requests for additional information, then they may seek relief from the Court. All information provided to Plaintiffs' counsel shall be considered confidential in accordance with the terms of the Agreed Protective Order, entered in this case on January 12, 2017 (Civil Docket Document No. 19), which shall continue to apply to any such disclosure of confidential information to the Plaintiffs' counsel.

21. At the time of any Class Member's annual redetermination, following the Class Member's 19th and 20th birthdays, the class members will be notified of the terms and obligations set forth in paragraphs 11-18 of this Settlement Agreement.

22. Defendant may establish operational policies and structures necessary to implement this Settlement Agreement, including but not limited to financial and budgeting matters, funding of mechanisms, and interagency coordination of services.

23. This Settlement Agreement applies to all named Plaintiffs and Class Members and fully resolves all claims for any form of relief that have been or could have been raised by or on behalf of the named Plaintiffs and Class Members relating to the subject of this action.

24. The Parties agree to use their best efforts to carry out the terms of this Settlement Agreement. At no time shall any of the Parties or their counsel seek to solicit or otherwise advise the Class Members to submit objections to this Settlement Agreement or to appeal from the order giving final approval to this Settlement Agreement.

25. This Settlement Agreement supersedes all prior agreements, representations, negotiations, or positions taken by the Parties in this litigation and contains all the terms and

conditions agreed upon by the Parties. No other agreement regarding the subject matter of this proceeding shall be deemed to exist, or to bind the Parties, or vary the terms and conditions expressly contained in this Settlement Agreement.

26. The Parties jointly participated in the drafting of this Settlement Agreement. Any ambiguity shall not be construed for or against either Party.

27. This Settlement Agreement may not be amended, modified, or supplemented except by an agreement in writing signed by the Parties and approved by the Court.

28. This Settlement Agreement shall inure to the benefit of and be binding upon the legal representatives of any successor of Plaintiffs and Defendant.

29. No Class Member or any other group or entity purporting to act on behalf of any Class Member may seek to enforce this Settlement Agreement based on isolated instances of alleged non-compliance. In the event that Class Counsel believes that Defendant is not materially complying with the terms of the Settlement Agreement, Class Counsel shall provide written notice to Defendant of Defendant's alleged material non-compliance. Defendant shall respond in writing within 30 days of receipt of Class Counsel's notification of a claim on non-compliance. Class Counsel shall advise Defendant of their acceptance or rejection of Defendant's response within 7 business days of their receipt of Defendant's response. If rejected, the Parties shall meet within 14 days to discuss and attempt to resolve any matter addressed in the written submissions in good faith. At the end of negotiations, the parties shall create a document that sets forth the issue(s) in dispute as well as resolution, or if there was no resolution, the respective positions of the parties. If the Parties are not successful in their efforts to resolve the matter, they may jointly or individually seek intervention from the Court for the purpose of effecting compliance with the provisions specified in the written submissions. The parties may agree in writing to modify the

timelines in this paragraph to accommodate appropriate inquiry, review, and resolution of a compliance matter before seeking court resolution.

30. If Class Counsel seeks intervention by the Court, Class Counsel may move the Court for an order for compliance with the Settlement Agreement. If Class Counsel later contend that Defendant has not materially complied with the Court's compliance order, Class Counsel may move the Court for further relief to enforce compliance, including requesting an order to show cause why Defendant should not be held in civil contempt. Class Counsel will not seek an order to show cause without first meeting and conferring with Defendant's counsel in a good faith effort to resolve the dispute.

31. Non-compliance with this Settlement Agreement shall not be interpreted or understood to encompass individual challenges to the sufficiency, amount, medical necessity of, or result of any prior approval for in-home shift nursing services. All individual challenges to the sufficiency, amount, medical necessity of, or result of any prior approval for in-home nursing services must proceed through existing state processes for administrative appeal and judicial review.

32. Costs of Notices. The cost of all notices hereunder or otherwise ordered by the Court shall be borne by Defendant.

33. Signatories. Each undersigned representative of Defendant and the Attorney General for the State of Illinois certifies that he or she is authorized to enter into this Settlement Agreement and to execute and bind legally Defendant to its terms. Each undersigned representative of Plaintiffs certifies that he or she is authorized to enter into this Settlement Agreement and to execute and bind legally Plaintiffs to its terms. Execution of this Settlement Agreement by signature is a condition precedent to the Settlement Agreement becoming effective and binding on

the Parties. This Settlement Agreement may be executed in counterparts, each of which will be deemed to be an original and all of which taken together shall constitute a single instrument. This Settlement Agreement may be executed by a signature via facsimile transmission or electronic mail which shall be deemed the same as an original signature.

34. Upon approval of this Settlement Agreement, the Court will enter judgment dismissing the action without prejudice. The judgment will incorporate by reference the terms of the Settlement Agreement.

35. The Court will retain jurisdiction to enforce the terms of the Settlement Agreement and to provide a forum to address issues of compliance and performance of the terms of the settlement. To permit enforcement of the terms of this Settlement Agreement, the Parties agree that, should it become necessary to seek Court assistance as to enforcement of the Settlement Agreement, any order granting such relief must include a finding that the relief sought is narrowly drawn, extends no further than is necessary, and is the least intrusive means for doing so.

36. This Settlement Agreement resolves and provides the sole and exclusive remedy for all claims and issues arising from this action that were raised or could have been raised by the Class certified by the Court. Defendant shall have no duties or obligations to Plaintiffs or Class Members for claims and issues arising from this action beyond the terms of this Settlement Agreement.

37. This Settlement Agreement shall be in effect for three years from the date of final approval by this Court, at which point this case shall be dismissed with prejudice.

38. Defendant agrees to pay to Class Counsel the sum of $140,000 from funds appropriated for HFS for fiscal year 2019 in full settlement of all of Plaintiffs' claims for attorneys' fees and costs associated with this litigation. Such amounts shall be distributed to Class Counsel

in the manner agreed to by the Parties. Such amounts shall be set forth in a Judgment Order to be entered by the Court. Defendant shall complete and submit all paperwork necessary for payment of such amounts within five business days after expiration of the time to appeal the fee award without the filing of a Notice to Appeal or after the issuance of the mandate by the highest reviewing court, whichever is later. Class Counsel shall not seek additional or future attorneys' fees or costs beyond those agreed to in this paragraph, including but not limited to any that may be related to any future implementation, enforcement, compliance, or other work associated with litigation and settlement of matters related to the *Donegan v. Bellock* class action.

EACH UNDERSIGNED PARTY enters into this Settlement Agreement in the matter of *Donegan v. Bellock*, Case No. 16-11178, pending in the United States District Court for the Northern District of Illinois, Eastern Division.

**FOR NAMED AND CLASS PLAINTIFFS:**

_____
Robert H. Farley, Jr.
1155 S. Washington Street
Naperville, IL 60540
Tel. 630-369-0103

Date: _____

_____
Mary Denise Cahill
Cahill & Associates Law Group LLC
1155 S. Washington Street
Naperville, IL 60540
Tel. 630-778-6500

Date: _____

**FOR DEFENDANT, DIRECTOR OF ILLINOIS DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES:**

_____
Patricia R. Bellock, Director of the Department of Healthcare and Family Services

Date: 1/6/19

EACH UNDERSIGNED PARTY enters into this Settlement Agreement in the matter of *Donegan v. Bellock*, Case No. 16-11178, pending in the United States District Court for the Northern District of Illinois, Eastern Division.

FOR NAMED AND CLASS PLAINTIFFS:

*/s/ Robert H. Farley, Jr.*
Robert H. Farley, Jr.
1155 S. Washington Street
Naperville, IL 60540
Tel. 630-369-0103
Date: 01/09/2019

*/s/ Mary Denise Cahill*
Mary Denise Cahill
Cahill & Associates Law Group LLC
1155 S. Washington Street
Naperville, IL 60540
Tel. 630-778-6500
Date: Jan 9, 2019

FOR DEFENDANT, DIRECTOR OF ILLINOIS DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES:

*/s/ Patricia R. Bellock*
Patricia R. Bellock, Director of the Department of Healthcare and Family Services
Date: 1/8/19